[Cite as *Westlake v. Wilson*, 2012-Ohio-2192.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 96948

## CITY OF WESTLAKE

PLAINTIFF-APPELLEE

vs.

## DONALD WILSON

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Rocky River Municipal Court
Case No. 10 CRB 1582

**BEFORE:** Boyle, P.J., Celebrezze, J., and Jones, J.

**RELEASED AND JOURNALIZED:** May 17, 2012

**ATTORNEY FOR APPELLANT**

Leif B. Christman
David G. Oakley
1370 Ontario Street
2000 Standard Building
Cleveland, Ohio   44113


**ATTORNEY FOR APPELLEE**

Sean F. Kelleher
City of Westlake Prosecutor
27300 Hilliard Boulevard
Westlake, Ohio   44145

MARY J. BOYLE, P.J.:

**{¶1}** Defendant-appellant, Donald Wilson, appeals his conviction for attempted drug trafficking. He raises five assignments of error for our review:

"[1.] The trial court erred in denying [Wilson's Crim.R. 29 motion for acquittal] because attempted drug trafficking was improperly charged where the drugs were found prepped for shipment.

"[2.] The trial court erred in denying [Wilson's] motion to suppress because the citizen informant's tip did not create sufficient reasonable suspicion that criminal activity was afoot to justify a traffic stop.

"[3.] The trial court erred in denying [Wilson's Crim.R. 29 motion for acquittal] where evidence presented was insufficient to sustain the jury's verdict of conviction.

"[4.] The trial court erred in denying [Wilson's Crim.R. 29 motion for acquittal] where the jury's verdict of conviction was against the manifest weight of the evidence.

"[5.] The trial court erred in denying [Wilson's Crim.R. 29 motion for acquittal] based on the solicitation by the prosecutor of officer testimony regarding alleged verbal and non-verbal statements of [Wilson] not provided during discovery."

**{¶2}** Finding no merit to his appeal, we affirm.

Procedural History and Factual Backgound

{¶3} Wilson was arrested in August 2010 and charged with attempted drug trafficking, in violation of R.C. 2923.02(A) and R.C. 2925.03(A)(2); possessing criminal tools, in violation of R.C. 2923.24(A); and possessing drug paraphernalia, in violation of R.C. 2925.14(C)(1).

{¶4} Prior to trial, Wilson moved to suppress all evidence against him, arguing that the police officer who pulled him over lacked reasonable suspicion of criminal activity to justify the traffic stop because it was initiated pursuant to a citizen informant. The following facts were presented at the suppression hearing.

{¶5} Michael Schilling testified that one evening in August 2010, around 7:30 p.m., he was driving westbound on Interstate 90 in the "slow lane" when he observed a vehicle passing him in the "middle lane." Schilling said that he first noticed the car because there was something wrong with one of the tires on it. He said that "one of the wheels was actually angled out," and "caused it to "swerve into [his] lane."

{¶6} Schilling testified that the passenger in the vehicle "had a bag of marijuana and [was] rolling a joint." Schilling observed the passenger, later identified to be Wilson, "rolling [marijuana] in some paper." Schilling testified that the substance "definitely wasn't tobacco." Schilling saw Wilson holding the paper "high enough that you could see that he was just rolling it," and then he "lit the joint." Schilling could see that the substance was in a "plastic baggie." He knew it was marijuana because he had seen "a joint rolled before," and "tobacco doesn't look like that in a plastic baggie."

{¶7} Schilling called 911 because he said it looked "like they were going to wipe

out." He said that he "backed off because [he] was expecting them to end up in the ditch." He told the dispatcher the people in the vehicle "were smoking a big ass joint." Schilling further described the vehicle to the dispatcher, explaining that "they couldn't miss it[;] [t]hey had a tire that's tilted in four to five inches." He also provided the dispatcher with his identifying information and a description of his vehicle.

{¶8} Jarred Sirl, a police officer for the city of Westlake, testified that he was driving eastbound on Interstate 90 when he received the call from dispatch asking "for any vehicle near I-90 westbound." He said that the dispatcher informed him that there were "occupants of a black Nissan smoking marijuana." The dispatcher also informed Officer Sirl that the Nissan had a damaged tire. Officer Sirl testified that he was given a partial license plate number as well; five of the six numbers. Officer Sirl immediately pulled into the "Cahoon turnaround," and saw the black Nissan pass him on I-90 westbound. He initiated a traffic stop after matching the five numbers in the license plate. He also saw the tire that was "not right."

{¶9} Jennine Ross, the police dispatcher, also testified. She stated that Schilling gave her his name, his telephone number, and described his own vehicle to her. He told her that the occupants of the car were smoking marijuana and they had a bag of it. She only relayed on the radio the description of the car and that "the occupants of the vehicle were smoking marijuana."

{¶10} The trial court denied Wilson's motion and the case proceeded to a jury trial. In addition to Schilling and Officer Sirl testifying again at trial, Officer Jeremy Bullins

also testified.

{¶11} Officer Sirl testified that when he pulled the Nissan over, the driver of the vehicle denied smoking marijuana; the driver said that they were smoking "Black and Milds." Wilson told Officer Sirl that they had been smoking a "blunt." Neither the driver nor Wilson had a valid driver's license. For that reason, Officer Sirl decided to impound the vehicle, which did not belong to either occupant. Pursuant to police protocol, Officer Sirl said that the vehicle had to be searched before impounding it.

{¶12} Officer Bullins arrived at the scene to assist Officer Sirl. Officer Bullins said that when he arrived, Officer Sirl already had the driver of the vehicle in the back of his patrol car. Officer Sirl asked Officer Bullins to secure Wilson. Officer Bullins got Wilson out of the Nissan, patted him down, and placed him in the back of his patrol car. Officer Bullins found $713 in Wilson's pocket. Officer Bullins asked Wilson what kind of work he did and he said that Wilson "kind of snickered" at him. Officer Bullins asked him again and Wilson replied that he was a tow truck driver. Officer Bullins further testified that Wilson also had two cell phones on his person, which he said was typical of people who sell drugs because they have one that is a "throw-away phone" that no one can trace.

{¶13} Officers Bullins and Sirl searched the Nissan together; Officer Bullins searched the passenger side of the vehicle and Officer Sirl searched the driver's side. Both officers smelled raw marijuana when they entered the car. Officer Bullins found an empty "baggie" on the passenger side of the center console in a cavity that had been

"tampered with," most likely to hide drugs according to Officer Bullins. Officer Sirl said he reached down into the same cavity of the center console on the driver's side and found a black bag that contained three smaller bags of marijuana and a palm-size digital scale. The bags of marijuana weighed a total of 60 grams.

{¶14} The jury found Wilson guilty of attempted drug trafficking, but not guilty of possessing criminal tools or possessing drug paraphernalia. The trial court sentenced him to 180 days in jail, and then suspended the 180 days, one year of community control supervision, fined him $150, and ordered that he pay costs.

{¶15} It is from this judgment that Wilson appeals. We will discuss his assignments of error out of order for ease of discussion.

Motion to Suppress

{¶16} In his second assignment of error, Wilson argues that the trial court erred when it denied his motion to suppress. The only issue Wilson raised in his motion to suppress was that the officer's initial stop of him violated the Fourth Amendment because the officer lacked reasonable suspicion of criminal activity to justify the stop. Wilson maintains that the officer's stop of him was "constitutionally unreasonable" because the citizen who called the police only observed "two individuals in a vehicle smoking," which he claims did not amount to reasonable suspicion of criminal activity.

{¶17} Appellate review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 7, ¶8. This court accepts the trial court's findings of fact if

they are supported by competent, credible evidence. *Id.* Accepting these facts as true, this court must independently determine, as a matter of law and without deference to the trial court's conclusion, whether those facts meet the applicable legal standard. *Id.*

{¶18} The proper test for determining the constitutionality of a stop of a person's vehicle is set out in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which allows police officers to stop motorists to investigate a reasonable suspicion of criminal activity. Under *Terry*, the officer must be able to point to specific and articulable facts which, when taken together with inferences rationally drawn from those facts, reasonably warrant the intrusion. *Id.* at 21. Determination of whether reasonable suspicion exists in any given case requires review of the totality of the surrounding facts and circumstances. *State v. Bobo*, 37 Ohio St.3d 177, 524 N.E.2d 489 (1988), paragraph one of the syllabus. Those circumstances must be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold. *State v. Andrews*, 57 Ohio St.3d 86, 89, 565 N.E.2d 1271 (1991).

{¶19} In *Maumee v. Weisner*, 87 Ohio St.3d 295, 296, 720 N.E.2d 507 (1999), the Ohio Supreme Court held that "a telephone tip can, by itself, create reasonable suspicion justifying an investigative stop where the tip has sufficient indicia of reliability." A determination of the reasonableness of a stop under *Weisner*, just as any investigatory stop, "involves a consideration of 'the totality of the circumstances.'" *Id.* at 299, citing *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). "Under this analysis, 'both the content of information possessed by police and its degree

of reliability' are relevant to the court's determination." *Id.*, citing *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).

{¶20} Where the only information possessed by police prior to the stop is from an informant's tip, "the determination of reasonable suspicion will be limited to an examination of the weight and reliability due that tip," specifically, "whether the tip itself has sufficient indicia of reliability to justify the investigative stop." *Id.* The most important factors in determining the reliability of an informant's report are "the informant's veracity, reliability, and basis of knowledge." *Id.*, citing *White* at 328.

{¶21} *Weisner* noted that informants typically fit into one of three categories: the anonymous informant, the known informant, who is generally someone from the criminal world who has provided reliable tips in the past, and an identified citizen informant. *Id.* at 300. An anonymous informant typically is considered relatively unreliable and will generally require independent police corroboration. *Id.* But a tip from a known informant — an identified citizen informant — is afforded a greater degree of reliability. *Id.* at 301. The Supreme Court explained: "We believe that greater credibility may be due an informant * * * who initiates and permits extended police contact rather than one who phones in a tip and retreats from any further police interaction." *Id.* at 302.

{¶22} But the Supreme Court went on to emphasize that its "categorization of the informant as an identified citizen informant does not itself determine the outcome of [the] case. Instead it is one element of [the] totality of the circumstances review of [the] informant's tip, weighing in favor of the informant's reliability and veracity." *Id.* An

informant's "basis of knowledge" also furthers his credibility; a personal observation by an informant is due greater reliability than a secondhand description. *Id.*

{¶23} Finally, the *Weisner* court observed that the informant in that case made his report from the perspective of a motorist sharing the road with an impaired motorist who posed a threat to the informant and to other motorists. *Id.* at 300. In view of this factual predicate, the court concluded that the informant had a high degree of credibility; therefore, "the dispatch based upon [the informant's] tip was issued on sufficient facts to justify [the arresting officer's] investigative stop." *Id.* at 303.

{¶24} Here, Schilling not only gave his identifying information, he readily made himself available to testify as to what he observed at the suppression hearing and again at trial. Although he was only parallel to the Nissan for a short period of time, he explained that he saw Wilson roll what he believed to be marijuana and light it. Further, Schilling, like the informant in *Weisner*, also feared for his safety. He said he called 911 because it looked "like they were going to wipe out" due to the bad tire, which he informed the dispatcher about as well, who in turn informed Officer Sirl.

{¶25} Accordingly, we find no error on the part of the trial court in denying Wilson's motion to suppress. Wilson's second assignment of error is overruled.

Municipal Court Jurisdiction

{¶26} In his first assignment of error, Wilson frames his argument as a challenge to the sufficiency of the evidence. But he is actually challenging the municipal court's subject matter jurisdiction to hear and decide the case. Wilson was charged with and

convicted of attempted drug trafficking. He argues that he should have been charged with drug trafficking, not attempted drug trafficking. Drug trafficking is a fifth-degree felony and attempted drug trafficking is a first-degree misdemeanor. He therefore contends that his conviction should be vacated for lack of municipal court jurisdiction because the crime he committed was a felony, not a misdemeanor.

**{¶27}** Subject matter jurisdiction refers to a court's power to hear and decide a particular case on its merits. *BCL Ents., Inc. v. Ohio Dept. of Liquor Control*, 77 Ohio St.3d 467, 469, 675 N.E.2d 1 (1997); *Morrison v. Steiner*, 32 Ohio St.2d 86, 290 N.E.2d 841 (1972), paragraph one of the syllabus. A judgment rendered by a court lacking subject matter jurisdiction is void ab initio. *Patton v. Diemer*, 35 Ohio St.3d 68, 518 N.E.2d 941 (1988), paragraph three of the syllabus.

**{¶28}** R.C. 1901.20(A)(1) provides that the municipal court has subject matter jurisdiction over "any misdemeanor committed within the limits of its territory." The complaint filed in this case charged Wilson with attempted drug trafficking, in violation of R.C. 2923.02(A) and 2925.03(A)(2), a misdemeanor of the first degree. Because the complaint charged Wilson with a misdemeanor, the municipal court had subject matter jurisdiction over his case.

**{¶29}** Wilson's argument essentially challenges the decision to charge him with a misdemeanor rather than a felony. But the decision whether to prosecute and what charge to file is within the prosecutor's discretion. *See State ex rel. Jones v. Garfield Hts. Mun. Court*, 77 Ohio St.3d 447, 448, 674 N.E.2d 1381 (1997), citing *Mootispaw v.*

*Eckstein*, 76 Ohio St.3d 383, 385, 667 N.E.2d 1197 (1996). Such decisions are not normally subject to judicial review. *Id.*

**{¶30}** We further note that if we had agreed with Wilson on this assignment of error and sustained it, the state would be fully within its discretion to charge Wilson with drug trafficking in felony court because no double jeopardy attaches if a conviction is void ab initio. *State v. Brock*, 110 Ohio App.3d 656, 666, 675 N.E.2d 18 (3d Dist.1996).

**{¶31}** Wilson's first assignment of error is overruled.

Sufficiency of the Evidence

**{¶32}** In his third assignment of error, Wilson argues that the city's evidence was not sufficient to convict him of drug trafficking or attempted drug trafficking. Specifically, he maintains that because the marijuana was found in the center console, but closer to the driver's side, it was not sufficient to establish "constructive possession." He therefore contends that this court should vacate his conviction.

**{¶33}** An appellate court's function in reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The relevant

inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.  *Jenks* at 273.

**{¶34}** The offense of drug trafficking under R.C. 2925.03(A)(2) provides that "[n]o person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe the controlled substance is intended for sale or resale by the offender or another[.]"  The Ohio Supreme Court has explained that "[i]n order to ship a controlled substance, deliver it, distribute it, or prepare it for shipping, etc., the offender must 'hav[e] control over' it.  R.C. 2925.01(K) (defining 'possession')."  *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, ¶30.

**{¶35}** R.C. 2925.01(K) defines possession as, "* * * having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."

**{¶36}** It is well settled that possession may be actual or constructive.  *State v. Haynes*, 25 Ohio St.2d 264, 267 N.E.2d 787 (1971).  Constructive possession cannot be inferred by a person's mere presence in the vicinity of contraband. *Cincinnati v. McCartney*, 30 Ohio App.2d 45, 281 N.E.2d 855 (1st Dist.1971); *State v. Harris*, 8th Dist. No. 88765, 2007-Ohio-3916, ¶13.  To establish constructive possession, the state must demonstrate that the defendant was able to exercise dominion or control over the

items, even though the items may not be within the defendant's immediate physical possession. *State v. Brown*, 8th Dist. No. 87932, 2007-Ohio-527, ¶7, citing *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982).

**{¶37}** After reviewing the facts in a light most favorable to the city, we conclude that it presented sufficient evidence of drug trafficking. Although the packaged marijuana was found closer to the driver's side of the vehicle, it was still within arm's reach of Wilson such that a rational trier of fact could infer that he had dominion and control over it. And although the city did not establish who owned the vehicle, it was neither Wilson nor the driver.

**{¶38}** Further, the police found $713 cash and two cell phones on Wilson's person. Officer Bullins testified that drug dealers often have large amounts of cash and multiple cell phones on them. Officer Bullins said they have multiple cell phones because they have one that is a "throw-away phone" that no one can trace. Although this court has recognized that having a cell phone is ubiquitous and therefore possession of one cell phone is not ipso facto proof that it was used in drug trafficking, the same cannot be said about having two cell phones. *See State v. Byers*, 8th Dist. No. 94922, 2011-Ohio-342, ¶9.

**{¶39}** Thus, we conclude that the city presented sufficient evidence of the element of constructive possession, such that a rational trier of fact could find Wilson guilty of drug trafficking beyond a reasonable doubt.

**{¶40}** Wilson's third assignment of error is overruled.

## Manifest Weight of the Evidence

**{¶41}** In his fourth assignment of error, Wilson argues that his conviction was against the manifest weight of the evidence.

**{¶42}** In reviewing a claim challenging the manifest weight of the evidence,

> [t]he question to be answered is whether there is *substantial* evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

(Internal quotes and citations omitted.) *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶81.

**{¶43}** In this argument, Wilson contends that because the jury found him not guilty of possession of criminal tools and not guilty of drug paraphernalia, it lost its way when it convicted him of drug trafficking because the digital scale was found in the "same bag as the four baggies of marijuana."

**{¶44}** Wilson is essentially arguing that because the jury reached an inconsistent verdict, his conviction was against the manifest weight of the evidence. But inconsistent verdicts on different counts of a multicount indictment do not justify overturning a verdict. *State v. Gapen*, 104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047, ¶137. "The several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same

count." *Id.*, quoting *State v. Adams*, 53 Ohio St.2d 223, 374 N.E.2d 137 (1978), paragraph two of the syllabus.

{¶45} Wilson's fourth assignment of error is overruled.

## Crim.R. 16

{¶46} In his fifth assignment of error, Wilson contends that he should be granted a new trial because the prosecutor failed to provide him with a police report that included the police officer's statement that Wilson smirked when the officer asked him what his occupation was, and that Wilson then stated he was a tow truck driver.

{¶47} Allegations of prosecutorial misconduct related to violations of Crim.R. 16 "result in reversible error only when there is a showing that (1) the prosecution's failure to disclose was willful, (2) disclosure of the information prior to trial would have aided the accused's defense, and (3) the accused suffered prejudice." *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173, ¶131, citing *State v. Parson*, 6 Ohio St.3d 442, 445, 453 N.E.2d 689 (1983). *See also State v. Joseph*, 73 Ohio St.3d 450, 458, 653 N.E.2d 285 (1995).

{¶48} Wilson did not object at trial to any discovery violation by the state, nor did he request that the court take any action to remedy the alleged discovery violation. But even if he had, we cannot say that he was prejudiced by the police officer's testimony. Schilling had testified that he saw Wilson with a "baggie" of marijuana, rolling a marijuana cigarette, and smoking it. Wilson further admitted to smoking marijuana. The four bags of marijuana were found within arm's reach of Wilson, and he had $713

and two cell phones on his person.

{¶49} Accordingly, Wilson's fifth assignment of error is overruled.

{¶50} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Rocky River Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., and
LARRY A. JONES, J., SR., CONCUR