[Cite as *State v. Giguere*, 2023-Ohio-4649.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                 No. 112470

    v.                                    :

CHRISTIAN GIGUERE,                :

    Defendant-Appellant.      :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 21, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-672560-B

---

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, Natalie M. Laszcz, and Alan Dowling, Assistant
Prosecuting Attorneys, *for appellee*.

John F. Corrigan, *for appellant*.

MARY J. BOYLE, J.:

{¶ 1} Defendant-appellant, Christian Giguere ("Giguere"), appeals his firearm specification in his drug possession conviction, raising the following assignments of error for review:

**Assignment of Error I:** [Giguere]'s firearm specification penalty enhancement in Count 3 [(drug possession)] is not supported by legally sufficient evidence as required by state and federal due process.

**Assignment of Error II:** [Giguere] was prejudiced by ineffective assistance of trial counsel.

For the reasons set forth below, we affirm Giguere's conviction.

## I. Facts and Procedural History

{¶ 2} In January 2023, a jury found Giguere guilty of having a weapon while under disability ("HWWUD") as charged in Counts 1 and 2 of the indictment; not guilty of the forfeiture specification as charged in Counts 1, 2, 3, 4, and 7; guilty of drug possession with firearm specifications as charged in Counts 3 and 4; not guilty of drug possession with firearm and forfeiture specifications as charged in Counts 5 and 6; and guilty of possessing criminal tools with the intended use in the commission of a felony under Count 7. We limit the facts set forth below to those relevant to the assigned errors relating to the one-year firearm specification Giguere challenges.

{¶ 3} The state called five witnesses. Cleveland Police Vice Unit Detective Lawrence Smith ("Detective Smith") testified that he obtained and executed a search warrant at 3811 Muriel Avenue in Cleveland ("3811 Muriel") in April 2022. According to Detective Smith, SWAT made the initial entry and secured the residence and its occupants. Detective Smith described 3811 Muriel as "a house that drug activity is coming and going from." (Tr. 281.) Detective Smith testified that six

to seven people were inside, including their target, Fonda Holz ("Holz"), as well as Giguere, and Kelvin Theodus ("Theodus").

{¶ 4} Theodus testified that he lived at 3811 Muriel for about six or seven years and took care of the property. Theodus stated that he lived at 3811 Muriel with three other people, including Holz, to whom he rented an upstairs room. Theodus testified that it took him some time to figure out that Holz was selling drugs from 3811 Muriel, but once he did, he told her to stop. Theodus testified that Holz told him that she had a gun sometime prior to the execution of search warrant in April 2022. Theodus further testified that Holz was not supposed to have visitors, but he observed Giguere at 3811 Muriel and believed Giguere and Holz were dating. Theodus stated that he told Giguere "not to come around there" but Giguere would sneak in and stay with Holz by climbing through the bedroom window. (Tr. 373.) Theodus testified that he was in the kitchen when police officers brought Giguere down from the upstairs in April 2022: "[T]he police went upstairs and who do you think they brought down? [Giguere], the guy that didn't live there." (Tr. 377.)

{¶ 5} Cleveland Police Vice Unit Detective Matthew Randolph ("Detective Randolph") testified that he entered 3811 Muriel and went directly upstairs to the bedroom at the end of the hallway after SWAT advised the house was cleared. He went directly there because he received information that there was a firearm near the bedroom closet; he found the firearm in that vicinity. Detective Randolph identified the revolver that he located in the bedroom near the closet, as well as screenshots of his body camera footage showing the firearm's placement on a

nightstand that was located in a corner behind an open door "where the door swings out to the closet." (Tr. 394, 411.)

{¶ 6} Detective Randolph testified that he continued to search the bedroom after he found the firearm and found several used and fresh needles, suggesting intravenous drug use. Detective Randolph further stated that he found a backpack containing ammunition for a .38 Smith & Wesson, personal identifier cards for Giguere, and a pill bottle in the name of another individual. Detective Randolph authenticated his body camera footage that captured his removal of the ammunition and cards from the backpack and identified the ammunition itself, which matched the firearm that was recovered. Detective Randolph testified that three scales, two of which later tested positive for drug residue, were also located in the bedroom.

{¶ 7} Cleveland Police Vice Unit Detective William Salupo ("Detective Salupo") assisted Detectives Smith and Randolph with the April 2022 search warrant by taking inventory of the confiscated items found inside 3811 Muriel. Detective Salupo identified the search warrant inventory sheet and some of the items, including suspected heroin found on the steps and kitchen floor and the three scales and loaded syringes found in an upstairs bedroom. Detective Salupo testified that an H&R Arms revolver, ammunition, pills, and Holz's personal papers were also located in the upstairs bedroom.

{¶ 8} During the execution of the search warrant, Detective Smith had a conversation with Giguere about his whereabouts when SWAT entered 3811 Muriel

and informed Giguere a firearm was located in Holz's bedroom.  Detective Smith testified:

> While on scene, we — I asked the male sitting over at the table over there * * * what room he was located in.  He said upstairs, and I said in [Holz's] room?  He said yes.  I said, you will be going to jail today, and he said, what for, and I said there was a gun in the room. Once I mentioned there was a gun in the room, he didn't have a rebuttal.  He didn't say, well, that's not my gun.  He didn't say nothing like that at the time.

(Tr. 285.)  A portion of Detective Smith's body camera footage was played for the jury, depicting this exchange.

{¶ 9}  Cleveland Police Vice Unit Detective Prebhkirandip Singh ("Detective Singh") was also involved in the execution of the search warrant at 3811 Muriel. Detective Singh testified that he advised Giguere of his *Miranda* rights and searched his person in the living room.  Detective Singh believed that SWAT had previously detained Giguere and brought him down from the upstairs bedroom.  Detective Singh identified portions of his body camera footage, which depicted his search of Giguere.  Detective Singh recalled that he asked Giguere if anything was going to poke him, and Giguere told him that he had two syringes.  Detective Singh testified that he located the syringes containing suspected narcotics in Giguere's left pocket.

{¶ 10} Detective Randolph testified that one of the syringes on Giguere's person tested positive for fluorofentanyl, methamphetamine, 4 AMPP, and fentanyl. A second syringe tested positive for fluorofentanyl, 4 AMPP, and fentanyl while another other tested positive for methamphetamine, 4 AMPP, and fentanyl.

{¶ 11} When Giguere was leaving, Detective Smith testified that Giguere gave Holz a kiss and asked why she was going to jail. Detective Smith recalled, "I said, well, she's going to jail for the same thing as you, and he said, well, everything there is mine." (Tr. 288.) Detective Salupo identified himself in Detective Smith's bodycam footage and offered further testimony regarding the exchange:

> We were leaving the scene and some people were going to jail, some people were not. We were walking individuals out of the house, and the defendant was unsure about one of the individuals that was going with us and why, and he brought up a question on why somebody else was going to jail when he saw this person, one of the females walking behind him. He wanted to know why they were going to jail. And Detective Smith informed him that for the same reason you are, which meant for the drugs and the gun. I'm assuming he understood that to be that because he knew why he was going to jail so I assume when Detective Smith said the same reason you are, he understood that's why she was going jail and he immediately came back on his own and said that's all mine, along the lines of that's all mine.

(Tr. 321.)

{¶ 12} On cross-examination, Detective Smith admitted that he had no first-hand knowledge of where Giguere was secured because SWAT secured him, but confirmed Giguere told him he was in the upstairs bedroom and no one else was located upstairs. Detective Smith stated that "[w]ithin constructive possession of that bedroom where [Giguere] was located at, the gun was readily available to him" and, "[a]s far as I was concerned, [the gun] belonged to both [Holz and Giguere]." (Tr. 295, 301.) On cross-examination, Detective Randolph agreed that it was safe to say that they really did not know who the gun or backpack found in the bedroom belonged to.

{¶ 13} After its exhibits were admitted into evidence, the state rested. Giguere then called two witnesses on his behalf and testified in his own defense. Following Giguere's testimony, the defense rested and the trial court charged the jury. Later that day, the jury returned its verdicts. Relevant to the one-year firearm specification charged under Count 3, the jury specifically found that "the State did prove beyond a reasonable doubt that [Giguere] had a firearm on or about his person or under his control or acted with another who possessed a firearm while committing the offense of drug possession."

{¶ 14} The trial court sentenced Giguere to the following:

The court imposes a prison sentence at the Lorain Correctional Institution of 24 month(s). Court addresses merger of offenses. State and defense agree: Counts 1 and 2 and Counts 3 and 4 merge for the purposes of sentencing. The state elects the court to sentence on Counts 1 and 3. Count 1 — 12 months in prison. Count 3 — 1 year prison sentence for the firearm specification to run prior to and consecutive to 12-month prison sentence for the underlying offense. Count 7 — 12 months in prison. All counts to run concurrent to one another, total prison sentence of 24 months.

(Judgment Entry, 01/30/23.)

{¶ 15} Giguere now appeals his conviction for the firearm specification under Count 3.

II. Law and Analysis

A. One-Year Firearm Specification and Sufficiency of the Evidence

{¶ 16} Giguere only challenges the sufficiency of the evidence the state produced to find him guilty of the one-year firearm specification under Count 3,

drug possession. While Giguere admits that he is guilty of possessing drugs as found in Count 3, he does not agree that he should be convicted of the one-year firearm specification, which requires that Giguere had a firearm on or about his person or under his control while committing the underlying offense. Specifically, Giguere argues that the state failed to present sufficient evidence that he owned or was using, carrying, or within immediate physical reach of a firearm when the syringes with drugs were found on him or when he committed the crime of drug possession. Giguere contends that he should not have to serve an additional one-year sentence for a gun found in Holz's bedroom.

{¶ 17} We note that within the first assignment of error, Giguere discusses the firearm-specification jury instruction given as it relates to his sufficiency argument without providing any substantive analysis or assigning separate error. As a result, this court will limit its analysis to whether the state produced sufficient evidence to prove the essential elements of the one-year firearm specification under Count 3 beyond a reasonable doubt.

{¶ 18} R.C. 2941.141(A) states, in relevant part, that a one-year mandatory term may be imposed under R.C. 2929.14(B)(1)(a)(iii) if "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense." "Generally, 'on or about his person or under his control' or actual possession '"means that "the firearm was either carried on the defendant's person or was so near the defendant's person as to be conveniently accessible and within his immediate physical reach."'" *State v. Carson*, 8th Dist. Cuyahoga No. 104998,

2017-Ohio-7243, ¶ 15, quoting *State v. Smith*, 8th Dist. Cuyahoga No. 93593, 2010-Ohio-4006, ¶ 11, quoting 2 *Ohio Jury Instructions*, CR Section 4 at 127 (2008); 3 *Ohio Jury Instructions*, CR Section 541.141 (Rev. Oct. 3, 2015).

{¶ 19} However, possession of a substance or object, like a firearm, may also be constructive. *Id.* at ¶ 16, citing *State v. Jackson*, 8th Dist. Cuyahoga No. 97743, 2012-Ohio-4278, ¶ 38, citing *State v. Haynes*, 25 Ohio St.2d 264, 269-270, 267 N.E.2d 787 (1971). This court explained:

> Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within the individual's immediate physical possession. *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362 (1982), syllabus; *Westlake v. Wilson*, 8th Dist. Cuyahoga No. 96948, 2012-Ohio-2192, ¶ 36. "A party has constructive possession where, conscious of its presence, he exercises dominion and control over something even though it is not within his immediate physical possession." *State v. Harry*, 12th Dist. Butler No. CA2008-01-013, 2008-Ohio-6380, ¶ 48, citing *Hankerson* at 91. The crucial issue therefore is not whether the accused has actual physical contact with the item, but whether the accused is capable of exercising dominion and control over the substance or object. *State v. Brooks*, 113 Ohio App.3d 88, 90, 680 N.E.2d 248 (6th Dist.1996), citing *State v. Wolery*, 46 Ohio St. 2d 316, 332, 348 N.E.2d 351 (1976).

*Id.*

{¶ 20} Consistent with other Eighth District decisions, in *Carson*, this court held that the state may demonstrate a defendant has dominion and control over a firearm for the purposes of R.C. 2941.141 by proving constructive possession of that firearm. *Id.* at ¶ 17, citing *State v. Easterly*, 8th Dist. Cuyahoga No. 94797, 2011-Ohio-215, ¶ 24, citing *State v. Davis*, 8th Dist. Cuyahoga No. 93844, 2010-Ohio-5123, *State v. Wilkins*, 12th Dist. Clinton No. CA2007-03-007, 2008-Ohio-2739,

and *State v. Conway*, 8th Dist. Cuyahoga No. 86140, 2005-Ohio-6634. This court further held that "the state need only show that the defendant had possession or constructive possession 'at some point' during the commission of the crime." *Id.* at ¶ 20, citing *State v. Benton*, 8th Dist. Cuyahoga No. 82810, 2004-Ohio-3116, ¶ 30. Indeed, "the firearm specification statute 'does not require that the firearm be used in the commission of the felony, or that the defendant acquire the firearm before beginning the crime; all that is necessary is that the defendant have the firearm on his person or under his control at some point during the commission of the crime.'" *Benton* at ¶ 29, quoting *State v. Powell*, 59 Ohio St.3d 62, 63, 571 N.E.2d 125 (1991).

{¶ 21} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing sufficiency is to determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks,* 61 Ohio St.3d 259, 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. An appellate court does not review whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction. *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25, citing *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶ 22} The state may use direct evidence, circumstantial evidence, or both to prove the essential elements of an offense. *State v. Rubin*, 8th Dist. Cuyahoga No. 106333, 2018-Ohio-3052, ¶ 26, citing *Jenks* at 272. "Direct evidence exists when 'a witness testifies about a matter within the witness's personal knowledge such that the trier of fact is not required to draw an inference from the evidence to the proposition that it is offered to establish.'" *State v. Wachee*, 8th Dist. Cuyahoga No. 110117, 2021-Ohio-2683, ¶ 36, quoting *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 13. Conversely, "circumstantial evidence requires 'the drawing of inferences that are reasonably permitted by the evidence.'" *Id.*, quoting *id.* "'Circumstantial evidence is proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind.'" *Id.*, quoting *State v. Hartman*, 8th Dist. Cuyahoga No. 90284, 2008-Ohio-3683, ¶ 37. "Circumstantial evidence and direct evidence inherently possess the same probative value." *Jenks* at paragraph one of the syllabus. This court has held that circumstantial evidence alone is sufficient to prove constructive possession. *Carson* at ¶ 19, citing *State v. Baird*, 8th Dist. Cuyahoga No. 96352, 2011-Ohio-6268, ¶ 19.

{¶ 23} The record reveals that a firearm was located in Holz's bedroom where Giguere stayed, along with a backpack containing cards personally identifying Giguere and ammunition matching the recovered firearm, and syringes and narcotics were located on Giguere's person and throughout 3811 Muriel. Detective

Smith testified that Giguere confirmed he was in Holz's bedroom when police arrived. This exchange was captured by Detective Smith's body camera footage.

{¶ 24} During Giguere's testimony, he admitted that the backpack containing ammunition matching the firearm was his and claimed 97 percent of his belongings were in 3811 Muriel. Detective Randolph authenticated his body camera footage capturing his removal of the ammunition and cards identifying Giguere from the backpack. Moreover, Detective Smith testified that he informed Giguere that he was going to jail because "there was a gun in the room," to which Giguere had no response. This testimony was corroborated by Detective Smith's body camera footage. Detective Smith further testified that Giguere said "everything there is mine" when he later told Giguere that Holz was going to jail for the same reason. Detective Salupo witnessed this exchange and testified that Giguere "immediately came back on his own and said that's all mine, along the lines of that's all mine."

{¶ 25} Reviewing this evidence in a light most favorable to the prosecution, we find that Giguere's conviction under R.C. 2941.141(A) is supported by sufficient evidence. The direct and circumstantial evidence presented at trial is sufficient to establish that Giguere knowingly exercised dominion and control over the firearm, even though the firearm may not have been within his immediate physical possession. Thus, the evidence against Giguere, if believed, supports his conviction under R.C. 2941.141(A) because Giguere had constructive possession of the firearm at some point while he was committing the felony offense of drug possession.

{¶ 26} Accordingly, we overrule Giguere's first assignment of error.

### B. Ineffective Assistance of Counsel

{¶ 27} In his second assignment of error, Giguere argues that he was prejudiced by ineffective assistance of trial counsel because his appointed attorney failed to object to the allegedly misleading firearm-specification jury instruction.

{¶ 28} To establish ineffective assistance of counsel, Giguere must demonstrate that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant so as to deprive him of a fair trial. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 98, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The failure to prove either prong of this two-part test makes it unnecessary for a court to consider the other prong. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000), citing *Strickland* at 697.

{¶ 29} Because Giguere argues that "a gun specification is limited to having a gun on your person or within immediate grasp to facilitate a criminal offense[,]" he claims that the jury instruction was improper and misleading because it "directed [the jury] to find the penalty enhancement if a gun coincidentally happened to be within reach at the time of the offense" and "told [them] that 'close' was good enough." Giguere asserts that the instruction "failed to instruct [the jury] that [Giguere] must have voluntarily brought the gun to his crime of [drug] possession."

{¶ 30} The state contends that the jury instruction is not misleading and, as a result, Giguere's trial counsel did not err by failing to object to it. The state argues

that the instruction was derived from the Ohio Jury Instructions. Further, the state contends that Giguere's argument is incorrect and misstates the law. The state maintains that Giguere "only needed to have control over the firearm" and he did not need to bring the firearm to the crime, be the owner of the gun, physically have the gun on his person, or use the gun to commit the offense of drug possession.

{¶ 31} We find that the firearm specification jury instruction challenged by Giguere is not misleading when read in conjunction with the unchallenged jury instruction on constructive possession since it is supported by caselaw. The challenged instruction provided, in relevant part:

> Firearm specification. If your verdict is guilty, you will separately decide whether the State proved beyond a reasonable doubt that the defendant had a firearm on or about his person or under his control or acted with another who possessed a firearm while committing the offense of drug possession.
>
> * * *
>
> On or about person or under control. On or about the defendant's person or under the defendant's control means that the firearm was on the defendant's person or so near the defendant as to be conveniently accessible and within the defendant's immediate physical reach.

(Tr. 544-545.)

{¶ 32} While Ohio Jury Instructions are not binding, the trial court's instruction mirrors the Ohio Jury Instructions for a one-year firearm specification under R.C. 2941.141 and the definition for "on or about his/her person or under his/her control." *See* 3 *Ohio Jury Instructions,* CR Section 541.141 (Rev. Oct. 3, 2015). Additionally, the trial court provided an instruction for constructive

possession under Count 3, which this court has found to be adequate proof of a defendant's control under R.C. 2941.141. *State v. Robinson*, 8th Dist. Cuyahoga No. 105667, 2018-Ohio-285, ¶ 22; *Carson*, 8th Dist. Cuyahoga No. 104998, 2017-Ohio-7243, at ¶ 15; *Easterly*, 8th Dist. Cuyahoga No. 94797, 2011-Ohio-215, at ¶ 24. Thus, we find no merit to Giguere's unsupported assertion that "[t]he instruction is incorrect or misleading because it fails to inform [the jury] that the gun must have been voluntarily injected into the offense by the offender." Indeed, R.C. 2941.141(A) requires the state prove only that Giguere had a firearm on or about his person or under his control while committing the offense. Because Giguere has not established that his trial counsel performed deficiently, he cannot gain reversal on a claim of ineffective assistance.

{¶ 33} Therefore, the second assignment of error is overruled.

{¶ 34} Accordingly, judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

MARY EILEEN KILBANE, P.J., and
MICHAEL JOHN RYAN, J., CONCUR