[Cite as *State v. Kemp*, 2024-Ohio-1276.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 112710 |
| v. | : | |
| JERMAINE KEMP, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 4, 2024

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-644907-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kristin Karkutt, Assistant Prosecuting Attorney, *for appellee.*

James J. Hofelich, *for appellant*

MARY J. BOYLE, J.:

{¶ 1} Defendant-appellant, Jermaine Kemp ("appellant"), appeals his convictions for two counts of aggravated murder, one count of attempted aggravated murder, two counts of murder, three counts of felonious assault, and two counts of having weapons while under disability. The appellant asserts that he received

ineffective assistance of counsel and that his convictions are against the manifest weight of the evidence. For the reasons set forth below, we affirm appellant's convictions.

## I. Facts and Procedural History

{¶ 2} The appellant was charged in a twelve-count indictment. Counts 1 and 2 charged him with aggravated murder; Counts 3 and 4 charged him with attempted aggravated murder; Counts 5 and 6 charged him with murder; Counts 7-10 charged him with felonious assault; and Counts 11-12 charged him with having weapons while under disability. Each of Counts 1-10 carried both a one- and three-year firearm specification. The appellant's case proceeded to trial. Counts 1-10 were before a jury while Counts 11-12 were before the bench. At trial, the state called 21 witnesses. The following is a summary of the evidence presented.

{¶ 3} Victim Willie Brantley ("Brantley") testified that on July 5, 2019, he, Joseph Watson ("Watson"), and Chrystal Mahlar ("Mahlar") helped the appellant move from his wife's house on Memphis Avenue in Cleveland. He testified that he was close friends with the appellant and Watson and that Watson was dating Mahlar.

{¶ 4} Brantley testified that after the move, the four drove around in Mahlar's Dodge Durango eventually stopping at Watson's cousin's house near West 25th Street. While there, appellant announced that his drugs were missing. The appellant and Brantley searched the area without success. Then the four backtracked, checking each location they had been that day and evening. While they

were driving, appellant accused Watson of stealing the drugs. Following the accusation, Watson switched seats with Brantley, moving from the front passenger seat to the back seat behind Mahlar. Brantley testified that Watson appeared scared; Watson thought appellant was going to shoot him. Eventually, Mahlar drove them to Henritze Avenue to search for the missing drugs.

{¶ 5} Brantley testified that after they parked, he and appellant exited the vehicle while Mahlar and Watson remained inside. Brantley relayed that appellant spoke on the phone with an unknown person before he suddenly walked up to the vehicle and began shooting at Watson and Mahlar from the passenger side. Brantley said that he tried to run away, but the appellant, with gun in hand, caught up to Brantley.

{¶ 6} Rogers arrived in a black Ford Focus and then appellant told Brantley to get into the vehicle. Brantley testified that he felt he had no choice after witnessing appellant shoot Watson and Mahlar. Brantley sat behind Rogers.

{¶ 7} At the appellant's direction, Rogers drove to the east side, stopping near some abandoned houses on Union Avenue and East 66th Street. Brantley testified that appellant exited the vehicle. As Brantley tried to get out, appellant attempted to shoot him in the head. Brantley blocked the gun and started to run. Appellant continued to shoot at Brantley. Brantley was shot five times before he collapsed in a field. He testified that the appellant left with Rogers. Brantley called 911 begging for help. He relayed that he had been shot by the appellant and that

appellant also shot his friend, Watson. His 911 call was played for the jury and Brantley could be heard saying, "I don't think I am gonna make it. Please hurry."

{¶ 8} Brantley was taken to MetroHealth Hospital, with gunshot wounds to the neck, back, arm, leg and sides, where he remained there for several days. Since the incident, Brantley has undergone three major surgeries including a back fusion. He now walks with a cane.

{¶ 9} Rogers testified that she separated from her husband, the appellant, in 2019. She testified that in the early morning hours of July 6, 2019, appellant called asking for a ride. She picked up appellant and Brantley on Spokane Avenue, which is around the corner from Henritze Avenue. She then drove them to a field on the east side of Cleveland. Rogers testified that both men had guns. She stated that both men exited the vehicle and were on driver's side when she heard gunshots. She claimed she sped off leaving appellant behind.

{¶ 10} Rogers maintained that she received a call from Cleveland police while she drove back from the east side requesting that she come to the station. Rogers testified that she told police the appellant shot Brantley. She then backtracked and claimed that the police told her the appellant shot Brantley. She also claimed that she did not notice that her back-passenger window had been shot out until police showed her. Rogers stated that she did not want to testify and acknowledged that she tried to leave prior to taking the witness stand.

{¶ 11} Two 911 callers testified. The first caller heard gunshots and saw two males running down West 47th Street; one was veering away from the other. The

second caller observed the back passenger door open on the Dodge Durango and went to check on it. He saw two people in the car that he presumed were dead. He did not hear gunshots.

{¶ 12} Cleveland Police Officer Jessica Wolski ("Officer Wolski") testified that when she arrived on scene at Hernritze, Watson still had a pulse. While her partner administered CPR, Officer Wolski recovered a small handgun from Watson's pocket. She turned the firearm over to her sergeant.

{¶ 13} Cleveland Police Officer Thomas Tohati ("Officer Tohati") testified that he and his partner, Nicholas Sefcik ("Officer Sefcik"), were the first to locate Brantley laying in the field at East 66th Street and Consul Avenue. Officer Tohati administered first aid to Brantley and testified that Brantley did not have a firearm or any ammunition on or near his person. Officer Tohati collected two spent 357 Magnum casings and a bullet fragment from the scene. Officer Sefcik testified that he collected Brantley's property including his clothing, cellphone, and cigarettes. He did not collect any firearms or ammunition from Brantley.

{¶ 14} James Kooser ("Kooser"), a forensic scientist at the Cuyahoga County Medical Examiner's Office, testified as an expert in firearm and toolmark examination. Kooser concluded that none of the evidence collected from either scene or either body came from the 9 mm Beretta Nano found on Watson's person, but rather from the same unknown 9 mm 357-Sig caliber pistol.

{¶ 15} Retired Detective Kevin Fischbach ("Det. Fischbach") testified that he was in the Cleveland Police Department's Homicide Unit at the time of the murders.

He testified that he interviewed Rogers that morning, and she was cooperative. It was through her interview that the murders and the shooting of Brantley were connected.

{¶ 16} At the close of the state's case, the state moved to dismiss Counts 4 and 10, which named Rogers as a victim. The appellant was found guilty of the remaining eight counts and accompanying firearm specifications. The trial court found appellant guilty of the weapons counts. The trial court sentenced appellant to total of two life terms plus an additional 20 years. Appellant now appeals his convictions, raising the following assignments of error for our review.

**Assignment of Error I:** Appellant received ineffective assistance of counsel when trial counsel failed to assert self-defense.

**Assignment of Error II:** Appellant's convictions were against the manifest weight of the evidence.

## II. Law and Analysis

### A. Defense Counsel was Not Ineffective

{¶ 17} In the first assignment of error, appellant argues that his trial counsel was ineffective because counsel did not file a notice of the intent to assert self-defense and did not argue the appellant acted in self-defense at trial. The state argues that defense counsel did file a notice of intent but did not argue self-defense because there was no evidence elicited at trial that would support such a claim.[1]

---

[1] We note defense counsel filed an intention to assert self-defense on March 31, 2023.

{¶ 18} To establish ineffective assistance of counsel, appellant must demonstrate that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant so as to deprive him of a fair trial. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 98, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The failure to prove either prong of this two-part test makes it unnecessary for a court to consider the other prong. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000), citing *Strickland* at 697; *State v. Giguere*, 8th Dist. Cuyahoga No. 112470, 2023-Ohio-4649, ¶ 28.

{¶ 19} In Ohio, every properly licensed attorney is presumed to be competent, and a defendant claiming ineffective assistance of counsel bears the burden of proof. *State v. Davis*, 8th Dist. Cuyahoga No. 110301, 2021-Ohio-4015, ¶ 25 citing, *State v. Black*, 2019-Ohio-4977, 149 N.E.3d 1132, ¶ 35 (8th Dist.), citing *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). When evaluating counsel's performance on an ineffective assistance of counsel claim, the court "must indulge a strong presumption" that counsel's performance "falls within the wide range of reasonable professional assistance." *Strickland* at 689; *see State v. Powell*, 2019-Ohio-4345, 134 N.E.3d 1270, ¶ 69 (8th Dist.), quoting *State v. Pawlak,* 8th Dist. Cuyahoga No. 99555, 2014-Ohio-2175, ¶ 69 ("'A reviewing court will strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'").

{¶ 20} A self-defense claim includes the following elements:

(1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he [or she] was in imminent danger of death or great bodily harm and that his [or her] only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger.

*State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, 216 N.E.3d 653, ¶ 14, quoting *State v. Barnes*, 94 Ohio St.3d 21, 24, 759 N.E.2d 1240 (2002).

{¶ 21} In 2019, the General Assembly modified the burden of proof requirements for affirmative defenses, including self-defense, by amending R.C. 2901.05. *See* 2018 Am.Sub.H.B. No. 228 ("H.B. 228"). Since the amendment, the burden regarding self-defense has been as follows:

A person is allowed to act in self-defense * * *. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense * * *, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense * * *.

R.C. 2901.05(B)(1).

{¶ 22} In *Messenger*, the Supreme Court considered whether H.B. 228 eliminated the defendant's burden of production regarding self-defense and determined that it did not. *Id*. at ¶ 21. The court went on to say that "a defendant charged with an offense involving the use of force has the burden of producing legally sufficient evidence that the defendant's use of force was in self-defense." *Id*. at ¶ 25. "[I]f the defendant's evidence and any reasonable inferences about that evidence would allow a rational trier of fact to find all the elements of a self-defense claim when viewed in the light most favorable to the defendant, then the defendant

has satisfied the burden," and the state must then disprove self-defense. *Id*. at ¶ 25. This burden of production is "not a heavy one and one that might even be satisfied through the state's own evidence." *Id*. at ¶ 22.

{¶ 23} We will address the second element of self-defense because it is dispositive of the issue. Just recently, in *State v. Palmer*, Slip Opinion No. 2024-Ohio-539, at ¶ 25, the Supreme Court reaffirmed that a defendant "did not need to present adequate evidence that every reasonable person would have believed he was in imminent danger and that deadly force was necessary[,]" but rather, the defendant "only needed to present adequate evidence that a reasonable person, under the same circumstances and with [defendant's] same subjective beliefs and faculties, would have believed that he was in imminent danger and that deadly force was necessary." *Id*., citing *State v. Thomas*, 77 Ohio St.3d 323, 330, 673 N.E.2d 1339 (1997). To make this assessment, we must put ourselves in the appellant's position. *See Thomas*.

{¶ 24} Appellant asserts that the evidence at trial supported a claim of self-defense, arguing that he was robbed at gunpoint. He points to Brantley's testimony that appellant's property had gone missing, that Mahlar and Watson were arguing, and that a gun was recovered from Watson's pocket. With regards to Brantley, appellant argues that Rogers testified that Brantley had a gun when he exited her car.

{¶ 25} Regarding the shooting of Mahlar and Watson, we find the appellant's arguments unpersuasive. Brantley testified that Mahlar and Watson always argued,

and on that day, Mahlar said she was stupid for being with Watson. Brantley testified that the appellant was not threatened by any of them, and although a gun was found in Watson's pocket, Brantley testified that Watson never brandished the weapon at any point. Further, there is no evidence that Watson fired his gun. The physical evidence at both scenes pointed to the same unknown 9 mm 357-Sig caliber pistol, not the 9 mm Beretta Nano recovered from Watson. Finally, Brantley testified that both him and the appellant were outside Mahlar's vehicle when the appellant made a phone call, and then walked up to the truck and fired, which is supported by the physical evidence. Therefore, we find that there was insufficient evidence in the record that appellant was being robbed or that he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was to use force.

{¶ 26} With regards to the shooting of Brantley, again we find appellant's arguments unpersuasive. Although Rogers testified that both men had a gun, there is no testimony that appellant and Brantley argued or threatened each other. Rogers testified that she observed the guns while driving, when "[t]hey were talking amongst each other." She also testified that both men exited her vehicle before she heard gunfire. Brantley testified that he did not have a gun, nor was a gun found on or around him when police searched the area. Further, the physical evidence supports the testimony that the appellant was outside Rogers's vehicle when he shot Brantley, not trapped inside. Hence, there is insufficient evidence to support that the appellant had a bona fide belief he was in imminent danger of death or great

bodily harm and that his only means of escape from such danger was to use force against Brantley.

{¶ 27} Viewing the evidence in a light most favorable to the appellant, this court cannot say that appellant presented legally sufficient evidence to support a claim of self-defense. Therefore, we find that trial counsel was not deficient.

{¶ 28} Accordingly, the first assignment of error is overruled.

### B. Appellant's Convictions are Not Against the Manifest Weight of the Evidence

{¶ 29} In the second assignment of error, appellant argues that his convictions are against the manifest weight of the evidence because there was very little evidence presented to convict him of the crimes charged other than Brantley's testimony, which he argues was not credible.

{¶ 30} When reviewing a manifest-weight challenge, an appellate court, "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Virostek*, 8th Dist. Cuyahoga No. 110592, 2022-Ohio-1397, ¶ 54, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A reversal on the basis that a verdict is against the manifest weight of the evidence is granted "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *Martin* at 175.

{¶ 31} As this court has previously stated:

The criminal manifest weight-of-the-evidence standard addresses the evidence's effect of inducing belief. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541 (1997). Under the manifest weight-of-the-evidence standard, a reviewing court must ask the following question: whose evidence is more persuasive — the state's or the defendant's? *Wilson* at *id.* Although there may be legally sufficient evidence to support a judgment, it may nevertheless be against the manifest weight of the evidence. *Thompkins* at 387; *State v. Johnson*, 88 Ohio St.3d 95, 723 N.E.2d 1054 (2000).

When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. *Wilson* at *id.*, quoting *Thompkins* at *id.*

*State v. Williams*, 8th Dist. Cuyahoga No. 108275, 2020-Ohio-269, ¶ 86-87.

{¶ 32} Appellant argues that the state's case was predominantly based on Brantley's testimony, which was not credible. He argues that Brantley was either an accomplice to the murder of Mahlar and Watson or to the attempted robbery of the appellant. We disagree.

{¶ 33} Nearly all of Brantley's testimony was corroborated by the physical evidence, witness testimony, and 911 calls. For instance, the medical examiner testified that Mahlar sustained a single gunshot wound to her right neck, and Watson sustained three gunshot wounds: one to his right shoulder, one to his right upper arm, and one to his right chest. The medical examiner also testified that he observed a large pattern of stippling on Mahlar, which occurs when a gun is fired at close range. Additionally, the location of the spent shell casings supports the conclusion that appellant walked up to the vehicle from the passenger side and shot

Mahlar and Watson. Rogers confirmed that she picked up the appellant and Brantley and drove them to the east side where they both got out of her vehicle, and then she heard gunshots. Cleveland Police Detective Kevin Walsh testified that Rogers's vehicle sustained a bullet defect to the rear driver's side window and rear driver's side quarter panel. State's exhibits Nos. 29 through 38 depict fresh blood, broken glass, and spent casing on the street and in the field where Brantley was located by police. Finally, Brantley's 911 call supports the conclusion that appellant shot at Brantley when he was getting out of Rogers's vehicle and shot Brantley multiple times as he ran into the field.

{¶ 34} After reviewing the entire record, weighing the inferences, and examining the credibility of witnesses, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice. Therefore, appellant's convictions are not against the manifest weight of the evidence.

{¶ 35} Accordingly, the second assignment of error is overruled.

## III. Conclusion

{¶ 36} We find that trial counsel was not ineffective because no evidence was elicited at trial to support a claim of self-defense. Further, we cannot say that the jury clearly lost its way; thus appellant's convictions are not against the manifest weight of the evidence.

{¶ 37} Accordingly, the judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

EILEEN A. GALLAGHER, P.J., and
MICHAEL JOHN RYAN, J., CONCUR