[Cite as *State v. Hsu*, 2024-Ohio-2584.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                                  :

    Plaintiff-Appellee,                :

                                          No. 113392

    v.                                          :

CHIH-WEI HSU,                                   :

    Defendant-Appellant.               :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 3, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-682421-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Melissa Riley, Assistant Prosecuting Attorney, *for appellee*.

Edward M. Heindel, *for appellant*.

FRANK DANIEL CELEBREZZE, III, J.:

{¶ 1} Appellant Chih-Wei Hsu ("appellant") brings this appeal challenging his convictions for promoting prostitution and possession of criminal tools. After a thorough review of the applicable law and facts, we affirm the judgment of the trial court.

# I. Factual and Procedural History

{¶ 2} In June 2023, the Northeast Ohio Human Trafficking Task Force ("Task Force") observed an ad from Adultlook.com, which is a website where sex providers advertise services to potential customers. The ad stated as follows:

> Nude Japanese and Russian girls, full of VIP service, two sexy young girl [sic], big boobs, fun, shower, sex with many positions, BBBJ, doggy style, f*ck, enjoy, oral, 69 position, passionate kissing, penis massage, penis suck, specially f*ck your own style, waiting for [sic] have fun with you, come and check us out, our number one goal is to make you leave happy and refreshed

{¶ 3} The ad noted a cell phone number along with hours of operation and stated that it was in Parma. Task Force Investigator Scott Moran texted the number and attempted to set up a date for the following day. He requested two "girls" for VIP service and was quoted a price of $600. He agreed to the price and arranged to meet up the next morning. He was told to go to an address on North Church Drive in Parma Heights, Ohio.

{¶ 4} The next day, Investigator Moran went to the location, which was an apartment building, and texted the telephone number from the ad when he arrived. He was directed to Unit 130, where he headed along with other assisting detectives and Parma Heights police officers following at a distance. He knocked on the door, and a woman dressed in lingerie answered. She gestured for him to be quiet.

{¶ 5} Investigator Moran then identified himself as law enforcement, and he and the assisting officers cleared and secured the apartment.

{¶ 6} When the woman opened the door, she had a cell phone in her hand and Investigator Moran was able to observe that it was open to an app called WeChat, which was the chat he had engaged in when he arranged the date.

{¶ 7} Officers observed an additional person in the apartment, who was later identified as appellant. He was located in the furthest corner of the kitchen area of the apartment. According to Investigator Moran, it did not seem as though any food was being prepared in the kitchen.

{¶ 8} Photographs were taken of the apartment unit by the officers. There was no furniture in the living room, but there was a Nest Camera in one upper corner that faced the living room. A corner of the carpet in the living room was disturbed, and when it was pulled up, there were dozens of condoms hidden underneath.

{¶ 9} In one of the bedrooms was a bed and a nightstand. On the nightstand were more condoms, KY Jelly, Johnson's Baby Oil, and other forms of lubricant. Another bedroom also contained a bed and nightstand and was illuminated with a pink light. On this nightstand was a hairbrush, flushable cleansing wipes, food, glasses, and Johnson's Baby Oil.

{¶ 10} Appellant was in possession of a Chinese passport, and the woman had a passport from Romania. When asked why he was there, appellant stated that he had just moved in a day or two ago and was there to provide cooking for the residence.

{¶ 11} Appellant was arrested, and officers seized $400 that was found on his person. Three cell phones were located in the apartment. One cell phone was a

Samsung Galaxy phone that required a passcode to open, which appellant provided. When officers used the passcode, the phone opened to the same WeChat conversation that the woman had had on her phone when Investigator Moran entered. All three phones were seized as evidence.

{¶ 12} An extraction was performed on the Samsung phone that appellant had assisted the officers in opening. On the phone were pictures of a number of items that had been observed in the apartment unit, including the Nest Camera, flushable wipes, and a mattress. There was also a picture of the woman who had answered the door, a table from the apartment unit, and pink LED lights.

{¶ 13} In addition, the phone held videos from the Nest Camera. Multiple videos depicted women allowing unknown males to enter the apartment unit. Another video showed appellant leaving the kitchen area and going to the living room closet.

{¶ 14} The phone also contained group texting chats where terminology related to prostitution was used. Text messages were extracted from the cell phone, including one from appellant to another woman that stated:

> Trip in 11 minutes? You promised your VIP service when you came. Now you're disappointing me with your performance. He won't come back when you're done with these guests. Now the manager has received the complaint. Please change your VIP service must be maintained for more than 45 minutes. Thanks.

{¶ 15} When officers spoke with management of the apartment, they learned that the unit was leased by a person named Tao Yan. The day after appellant was arrested, an eviction notice was issued to Tao Yan and "all other occupants."

{¶ 16} Appellant was indicted on charges of (1) promoting prostitution, a felony of the fourth degree, in violation of R.C. 2907.22(A)(1); (2) promoting prostitution, a felony of the fourth degree, in violation of R.C. 2907.22(A)(2); and (3) possession of criminal tools, a felony of the fifth degree, in violation of R.C. 2923.24(A).

{¶ 17} The matter proceeded to a jury trial where the State presented the testimony of Investigator Moran, Cleveland Police Department Detective Kevin Navratil, who performed the cell phone extraction, and Chad Tibbits, a crime analyst for the Task Force. Appellant did not present any witnesses or evidence.

{¶ 18} The jury found appellant guilty of all three counts. Appellant was sentenced to 12 months in prison on each count to be served concurrently, and he was labeled a Tier I sex offender. Appellant then filed the instant appeal, raising three assignments of error for our review:

I. The convictions were not supported by sufficient evidence.

II. The guilty verdicts were against the manifest weight of the evidence.

III. The trial court erred when it failed to merge Counts 1 and 2 as these were allied offenses of similar import.

## II. Law and Analysis

### A. Sufficiency of the Evidence

{¶ 19} In his first assignment of error, appellant argues that his convictions were not supported by sufficient evidence. In particular, with regard to the promoting prostitution charges, appellant contends that there was no evidence that appellant managed or supervised any prostitution and that he was merely present

in the apartment when the officers arrived. He asserts that there was no money exchanged and sexual activity was never offered. Further, as it relates to the criminal tools conviction, appellant argues that he was not engaging in any criminal purpose while he was standing in the kitchen. He maintains that he was at the apartment solely to cook and, therefore, his cell phone was not a criminal tool.

{¶ 20} A sufficiency challenge requires a court to determine whether the State has met its burden of production at trial and to consider not the credibility of the evidence but whether, if credible, the evidence presented would sustain a conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991), citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

{¶ 21} A defendant is entitled to an acquittal of one or more offenses under Crim.R. 29 "[i]f the evidence is insufficient to sustain a conviction." *State v. Macalla*, 2008-Ohio-569, ¶ 38 (8th Dist.). In order to satisfy the burden of production, a party is required to furnish ample evidence to establish a prima facie case. *See State v. Petway*, 2020-Ohio-3848, ¶ 47 (11th Dist.). The role of an appellate court is not to determine whether the evidence presented by the State should be accepted as true, but rather to ascertain if the evidence, when accepted as true, would sustain a conviction against the defendant. *State v. Nelson*, 2014-Ohio-2189, ¶ 14 (8th Dist.), quoting *Thompkins*, 78 Ohio St.3d 380. We are precluded

from setting aside a conviction based on insufficiency of the evidence unless we conclude "that reasonable minds could not reach the conclusion reached by the trier of fact." *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001).

{¶ 22} "'Proof of guilt may be made by circumstantial evidence, real evidence, and direct evidence, or any combination of the three, and all three have equal probative value.'" *State v. Rodano*, 2017-Ohio-1034, ¶ 35 (8th Dist.), quoting *State v. Zadar*, 2011-Ohio-1060, ¶ 18 (8th Dist.). Although circumstantial evidence and direct evidence have obvious differences, those differences are irrelevant to the probative value of the evidence and circumstantial evidence carries the same weight as direct evidence. *Id.*, citing *State v. Cassano*, 2012-Ohio-4047, ¶ 13 (8th Dist.). Further, circumstantial evidence may not only be sufficient ""but may also be more certain, satisfying, and persuasive than direct evidence."" *Id.* at ¶ 36, quoting *State v. Hawthorne*, 2011-Ohio-6078, ¶ 9 (8th Dist.), quoting *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330 (1960).

{¶ 23} In the instant matter, appellant was charged with promoting prostitution under two subsections of R.C. 2907.22(A), which prohibits a person from knowingly (1) establishing, maintaining, operating, managing, supervising, controlling, or having an interest in a brothel or any other enterprise for facilitating engagement in sexual activity for hire; and (2) supervising, managing, or controlling the activities of a prostitute in engaging in sexual activity for hire.

{¶ 24} The State presented evidence that appellant maintained, operated, managed, supervised, or controlled a brothel or any other enterprise that facilitated

engagement in sexual activity for hire and also supervised or managed the activities of a prostitute. First, the State demonstrated that the activities being conducted in the apartment constituted a brothel or an enterprise that was facilitating engagement in sexual activity for hire and that the woman who answered the door in lingerie and others that appeared in the pictures on appellant's phone were prostitutes engaging in sex for hire. The apartment contained sparse furnishings but had beds and nightstands that contained products used for sexual activity, including condoms and lubricants. Moreover, the ad to which Investigator Moran responded clearly set forth that sexual activity was available for hire.

{¶ 25} In addition, appellant had pictures on his phone of supplies that were purchased in order to facilitate the sex acts and kept surveillance of the women working at the apartment and the men coming and going. Evidence showed that the Nest Camera was purchased several days after the apartment was leased. There was a picture of the receipt on appellant's phone, and the credit card used was the same card that was tied to appellant's PayPal account. In addition, appellant's phone had videos from the Nest Camera.

{¶ 26} Appellant contends that his cell phone was not being used for any criminal purpose. However, the State presented evidence demonstrating that appellant's cell phone was, in fact, used as part of his criminal conduct. There are photos on the phone of men coming and going from the apartment unit; appellant was engaged in a group chat on the phone that used prostitution terminology; and

he was texting one of the women to tell her that she needed to provide VIP service for longer than 45 minutes.

{¶ 27} After viewing the evidence in a light most favorable to the State, we conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant had promoted prostitution and possessed criminal tools. Appellant's convictions were therefore based upon sufficient evidence, and his first assignment of error is overruled.

## B. Manifest Weight of the Evidence

{¶ 28} In his second assignment of error, appellant argues that his convictions were against the manifest weight of the evidence. Appellant presents the same argument as he did with regard to the sufficiency of the evidence, to wit: he was simply present in the apartment and there was no evidence that he was involved in compelling prostitution.

{¶ 29} When reviewing a manifest weight challenge, an appellate court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Virostek*, 2022-Ohio-1397, ¶ 54 (8th Dist.), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A reversal on the basis that a verdict is against the manifest weight of the evidence is granted "'only in the exceptional case in which the evidence weighs

heavily against the conviction.'" *Thompkins,* 78 Ohio St.3d at 387, quoting *Martin* at 175.

{¶ 30} As this court has previously stated:

The criminal manifest weight of-the-evidence standard addresses the evidence's effect of inducing belief. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins*, 78 Ohio St.3d at 386, 1997-Ohio-52, 678 N.E.2d 541 (1997). Under the manifest weight-of-the-evidence standard, a reviewing court must ask the following question: whose evidence is more persuasive — the state's or the defendant's? *Wilson* at *id*. Although there may be legally sufficient evidence to support a judgment, it may nevertheless be against the manifest weight of the evidence. *Thompkins* at 387; *State v. Johnson*, 88 Ohio St.3d 95, 2000-Ohio-276, 723 N.E.2d 1054 (2000).

When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. *Wilson* at *id.*, quoting *Thompkins* at *id*.

*State v. Williams*, 2020-Ohio-269, ¶ 86-87 (8th Dist.).

{¶ 31} In its role as the "thirteenth juror," an appellate court must review the entire record, weigh the direct and circumstantial evidence and all reasonable inferences drawn therefrom, and consider the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *Martin.*

{¶ 32} Appellant does not provide any separate reasoning as to why his convictions were against the manifest weight of the evidence and simply reiterates the same assertions he raised in his sufficiency argument. Notwithstanding his failure to develop his manifest weight challenge, we find that appellant's convictions

for promotion of prostitution and possession of criminal tools were not against the manifest weight of the evidence.

{¶ 33} As discussed above, the State's case relied on circumstantial evidence that "requires 'the drawing of inferences that are reasonably permitted by the evidence.'" *State v. Wachee*, 2021-Ohio-2683, ¶ 36 (8th Dist.), quoting *Cassano*, 2012-Ohio-4047, at ¶ 13 (8th Dist.). "'Circumstantial evidence is proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind.'" *Id.*, quoting *State v. Hartman*, 2008-Ohio-3683, ¶ 37 (8th Dist.). "Circumstantial evidence and direct evidence inherently possess the same probative value." *Jenks*, 61 Ohio St.3d 259, at paragraph one of the syllabus.

{¶ 34} Having reviewed the entire record, we cannot say the jury in this case clearly lost its way and created such a manifest miscarriage of justice that appellant's convictions must be reversed and a new trial ordered. Based upon the evidence discussed in the prior assignment of error, appellant has not demonstrated that his convictions were against the manifest weight of the evidence and his second assignment of error is overruled.

## C. Merger

{¶ 35} In his third assignment of error, appellant argues that the trial court erred by failing to merge Counts 1 and 2 as allied offenses of similar import. He

contends that the promoting prostitution convictions should have merged because there were no identifiable separate acts that could constitute two crimes.

{¶ 36} R.C. 2941.25 prohibits the imposition of multiple punishments for the same criminal conduct and provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 37} The Supreme Court of Ohio, in *State v. Ruff*, 2015-Ohio-995, established that the test for determining whether offenses are allied offenses of similar import requires the trial court to consider three separate factors: import, conduct, and animus. Convictions do not merge and a defendant may be sentenced for multiple offenses if any of the following are true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus. *Id*. at ¶ 25. Two or more offenses of dissimilar import exist "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id*. at paragraph two of the syllabus.

{¶ 38} As it relates to the merger argument, appellant was convicted of two offenses of promoting prostitution. The elements of the two separate offenses of promoting prostitution in this case are (1) knowingly establishing, maintaining, operating, managing, supervising, controlling, or having an interest in a brothel or any other enterprise for facilitating engagement in sexual activity for hire; and (2) knowingly supervising, managing, or controlling the activities of a prostitute in engaging in sexual activity for hire.

{¶ 39} With regard to the first factor under *Ruff*, we find that the two offenses of promoting prostitution are dissimilar in import. Establishing, maintaining, or operating a brothel is distinct from supervising, managing, or controlling the activities of a prostitute that is engaged in sexual activity for hire.

{¶ 40} Under the second *Ruff* factor, we find that the two offenses of promoting prostitution were committed separately. The first offense involved obtaining supplies related to sexual activity and the Nest Camera for the apartment, which was being used as a brothel. The second offense was committed when appellant kept surveillance on the women in the apartment and sent a text message to one of the women to tell her to perform VIP service for at least 45 minutes.

{¶ 41} Finally, with regard to the third *Ruff* factor, the two offenses of promoting prostitution were committed with a different animus. One required the motivation to establish, maintain, or operate a brothel while the other involved the motivation to supervise, manage, or control a prostitute.

{¶ 42} The offenses were not allied offenses of similar import, and the trial court was therefore not required to merge the two separate offenses of promoting prostitution. Appellant's final assignment of error is overruled.

### III. Conclusion

{¶ 43} Appellant's convictions were supported by sufficient evidence and not against the manifest weight of the evidence. In addition, the trial court did not err in declining to merge Counts 1 and 2 for purposes of sentencing. All of appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK DANIEL CELEBREZZE, III, JUDGE

MICHELLE J. SHEEHAN, P.J., and
EILEEN T. GALLAGHER, J., CONCUR